609 A.2d 576

**COMMONWEALTH of Pennsylvania**

v.

**James WARRICK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 1992.
Filed June 26, 1992.

Susan V. Kahn, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal *nunc pro tunc* from a judgment of sentence entered after appellant, James Warrick, pled guilty to the crime of escape.[1] We affirm.

The charge underlying the instant appeal stems from appellant's behavior after judgment was rendered at a criminal trial held in 1983. The Honorable Mitchell Lipschutz found appellant guilty of narcotics possession on December 5, 1983. Immediately after the verdict was handed down, appellant ran out of the courtroom and down the stairs of the City Hall. However, police officers caught appellant before he left the building and returned him to the courtroom. Judge Lipschutz then found appellant in

---

1. 18 Pa.C.S.A. § 5121(a).

direct criminal contempt of court and sentenced him to serve a term of six (6) months imprisonment on that charge.

The District Attorney's Office later charged appellant with escape, based on the same facts. Appellant's motion to quash on double jeopardy grounds was denied by the trial court. The Superior Court affirmed this decision, and subsequently denied reargument on March 6, 1986. *Commonwealth v. Warrick*, 344 Pa.Super. 611, 497 A.2d 259 (1985). On April 17, 1986, appellant pled guilty to charges of escape. The Honorable Eugene Gelfand thereafter sentenced appellant to serve three and one-half (3–½) to seven (7) years on this charge.

No motion to modify sentence was filed, although appellant filed a notice of appeal. The direct appeal was dismissed in 1988 for counsel's failure to file a brief. Appellant subsequently filed a collateral attack[2] and his direct appeal rights were reinstated *nunc pro tunc* by the Honorable Francis A. Biunno. The instant appeal followed in which appellant submits one question for our review: can the conduct underlying a conviction for criminal contempt be used to support a subsequent prosecution for escape without violating the protection against double jeopardy provided by the United States Constitution?

The issue raised by appellant has already been presented before this court in this case. *Commonwealth v. Warrick, supra*. In 1985, we found that the joinder of appellant's criminal contempt charge with criminal charges stemming from the same incident "was not required by either 18 Pa.C.S.A. § 110 (when prosecution barred by former prosecution for different offense) or by the 'compulsory joinder rule' of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated and remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) (*Campana I*), *on remand*, 455 Pa. 622,

---

**2.** The certified record is unclear as to whether appellant's petition was filed under the Post Conviction Hearing Act ("PCHA") or the Post Conviction Relief Act ("PCRA"). The PCHA was modified in part, repealed in part and reenacted as the PCRA, effective April 13, 1988. The new provision applies to all actions for collateral relief instituted on or after that date. *See* 42 Pa.C.S.A. §§ 9541–9546.

314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) (*Campana II*)." *Commonwealth v. Warrick,* 344 Pa.Super. at 613, 497 A.2d at 260. Because appellant was summarily held in contempt, we held that double jeopardy did not bar his subsequent trial for escape. *Id.,* 344 Pa.Superior Ct. at 613–14, 497 A.2d at 260.

We could affirm appellant's conviction on the basis of our prior ruling.[3] We note, however, that the Double Jeopardy argument presented by the instant appeal has a different basis than the claim previously considered by this court. So that there will be no doubt that appellant's conviction for escape was proper, we shall address his current argument on its merits. Appellant grounds his present double jeopardy claim on a ruling handed down by the United States Supreme Court considerably after our prior decision in this case. *See Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady* holds that "the Double Jeopardy Clause [of the federal Constitution] bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in the prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. Instantly, the same conduct gave rise to appellant's

**3.** The precise question raised instantly, whether appellant's double jeopardy rights were violated, was decided in his previous appeal. The issue is therefore covered by *res judicata* or the "law of the case" doctrine. *Commonwealth v. Lenig,* 403 Pa.Super. 455, 459–60, 589 A.2d 700, 702–03 (1991), *allocatur denied,* 528 Pa. 636, 598 A.2d 993 (1991). "Under the doctrine of 'law of the case,' where an appellate court has considered and decided a question on appeal, that Court will not, in a subsequent appeal of another phase of the same case, reverse its previous ruling, even though convinced it was erroneous." *Accord Commonwealth v. Goldblum,* 498 Pa. 455, 472–73, 447 A.2d 234, 243 (1982) (appellant cannot relitigate on direct appeal from the judgment of sentence an issue previously appealed in the same case). Although it appears that the United States Supreme Court has not spoken on this issue, both the Fifth and Eighth Circuits have determined that rejection of a double jeopardy claim on a pre-trial appeal is the law of the case. *See U.S. v. Mize,* 820 F.2d 118, 119–20 (5th Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987) (rejection of double jeopardy claim on appeal from first trial is the law of the case); *U.S. v. Grabinski,* 727 F.2d 681, 687 (8th Cir.1984).

convictions for both contempt and escape. However, we find that *Grady* is inapposite to the present case because summary criminal contempt is by its nature a different type of offense than other crimes, *e.g.*, escape. *See Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied*, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985) (explaining the policies advanced by refusing to require joinder of contempt with any additional criminal charges to which the facts may give rise).

■ In *Allen*, the Pennsylvania Supreme Court stressed the fact that criminal contempt consists of acts tending to lessen the dignity or impede the process of the court. *Id.*, 506 Pa. at 513, 486 A.2d at 369. Thus, summary criminal contempt proceedings are instituted to vindicate the authority of the court and must be viewed as a necessary tool for deterring abuse of the judiciary. *Id.* This function demands that a judge not be required to consider the consequences of foreclosing subsequent criminal prosecutions when sanctioning a contemnor for his actions. *Id.*

We are cognizant of the fact that *Commonwealth v. Allen* was decided without the benefit of *Grady v. Corbin* and was based solely on the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). However, we find nothing in *Grady v. Corbin* which negates the careful balancing of society's needs versus the constitutional rights of a defendant which was articulated by the Supreme Court of Pennsylvania in the rationale underlying *Allen*. Furthermore, *Grady* explicitly recognizes that an exception to its double jeopardy analysis may exist where the government is unable to proceed on the more serious of two charges for various administrative or procedural reasons. *Grady v. Corbin*, 495 U.S. at 516 n. 7, 110 S.Ct. at 2090 n. 7, 109 L.Ed.2d at 561 n. 7. The necessity of providing a court with the immediate means to protect its dignity and its ability to properly conduct judicial proceedings must be deemed at least as important as the administrative and procedural concerns recognized by *Grady*.

We note, moreover, that the United States Supreme Court has severely limited the scope of *Grady* by its ruling in *U.S. v. Felix,* ⸺ U.S. ⸺, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). The question before the Court in *Felix* was whether the Double Jeopardy Clause prohibits a separate prosecution for conspiracy in addition to a prosecution for other crimes based upon the conduct underlying the conspiracy charge. The Court concluded that the Double Jeopardy Clause creates no bar in such a case.

In *Felix,* the defendant operated a facility in Beggs, Oklahoma at which he manufactured methamphetamine in violation of applicable federal statutes. Because law enforcement officers were in pursuit of his activities, he moved his operation to Joplin, Missouri where he continued manufacturing methamphetamine. He was tried and found guilty for Missouri activities and his conviction and sentence were affirmed by the court of appeals for the Eighth Circuit. Subsequently he was charged in Oklahoma with both conspiracy and manufacturing counts in connection with his operation at Beggs, Oklahoma. Although he was tried and convicted, a divided panel of the Court of Appeals for the Tenth Circuit reversed most of the counts on which he had been found guilty because of its view that in light of the prior prosecution, trial on these counts constituted double jeopardy in violation of the Fifth Amendment.

The Supreme Court of the United States granted *certiorari* on the Tenth Circuit's decision. In *Felix,* the Supreme Court holds that the prosecution of a defendant for conspiracy, where the same conduct was relied upon by the prosecution for proof of conspiracy and substantive offenses was basically the same conduct on which the defendant had been previously convicted, does not violate the double jeopardy clause. The Supreme Court noted that the Tenth Circuit began its opinion by quoting language from *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), to the effect that the Double Jeopardy Clause bars a subsequent prosecution where the government, " 'to establish an essential element of an offense charged in that

prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.'" *See U.S. v. Felix,* — U.S. at —, 112 S.Ct. at 1381, 118 L.Ed.2d at 32, *quoting* 926 F.2d 1522, 1527 (1991) (quoting *Grady v. Corbin, supra,* 495 U.S. at 521, 110 S.Ct. at 2093). However, the Supreme Court in *Felix* holds that the Court of Appeals was incorrect in its assumption that if the government offers evidence of conduct to prove an offense at one trial resulting in conviction, it is offensive to the double jeopardy rule to use the same conduct as the basis of proof of another offense presented at a second trial. The Court went on to say "our precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *U.S. v. Felix,* — U.S. at —, 112 S.Ct. at 1382, 118 L.Ed.2d at 34. The *Felix* Court further explained that the reliance by the Court of Appeals on language in *Grady v. Corbin* "is an extravagant reading of *Grady,* which disclaimed any intention of adopting a 'same evidence' test." *Id.* The Supreme Court also said that its decision in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), "drove home this point."

In *Felix,* the Supreme Court explicitly warned against taking language in *Grady v. Corbin* out of its proper context to support a defense of double jeopardy. *Id.* at —, 112 S.Ct. at 1383, 118 L.Ed.2d at 35. The Court cautioned against reading *Grady v. Corbin* too literally so as to unjustifiably expand federal double jeopardy rights. *Id.* at —, 112 S.Ct. at 1383–84, 118 L.Ed.2d at 35–36.

▮ Basically, this case is not only about the effect of conspiracy vis-a-vis double jeopardy. The salient difference between *Grady v. Corbin* and *United States v. Felix,* as they apply to all cases involving multiple crimes, is that *Grady* would preclude a second trial where the same conduct underpins the commission of two or more crimes and would thus preclude a second trial on the remaining crime or crimes. *United States v. Felix,* on the other hand, holds that conduct is not the criterion in double jeopardy consider-

ations but instead the criterion lies in the difference existing in the elements of the offenses arising out of the same incident. Therefore, where the fact necessary in the proof of one offense is different from the fact necessary in the proof of another offense arising out of the same incident, double jeopardy does not apply. This is in consonance with the provision in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution which provides, "Nor shall any person be subject for the *same offence* to be twice put in jeopardy of life or limb." In light of *Felix,* we conclude that there is no justifiable basis under *Grady* upon which we can distinguish *Commonwealth v. Allen, supra.* Until either the Pennsylvania Supreme Court or the United States Supreme Court clearly indicates that a conviction of direct criminal contempt triggers double jeopardy protections for additional criminal charges based on the same conduct, we cannot grant the type of relief sought by appellant.[4]

Judgment of sentence affirmed.

WIEAND, J. concurs in the result.

---

**4.** As an intermediate appellate court, the Superior Court is bound by the decisions of the Pennsylvania Supreme Court. *Commonwealth v. Jones,* 388 Pa.Super. 22, 30, 564 A.2d 983, 987 (1989) (*en banc*), *allocatur granted,* 526 Pa. 630, 584 A.2d 313 (1990); *Commonwealth v. Butch,* 257 Pa.Super. 242, 390 A.2d 803 (1978). Absent a legally relevant distinction between a previous decision by the Pennsylvania Supreme Court and a case before the Superior Court, we are obliged to follow the mandate of the prior Supreme Court ruling. *See, e.g., Malinder v. Jenkins Elevator & Mach. Co.,* 371 Pa.Super. 414, 538 A.2d 509 (1988) (*en banc*). *See also Commonwealth v. Scoleri,* 399 Pa. 110, 130 n. 16, 160 A.2d 215, 225 n. 16 (1960), *cert. denied,* 364 U.S. 849, 81 S.Ct. 93, 5 L.Ed.2d 72 (1960), *quoting* Cardozo, J. in *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932) (a state may, without offending the federal Constitution, provide that "decisions of its highest court, although later overruled, are law nonetheless for intermediate transactions").