J-A10027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                            :            PENNSYLVANIA
                                                            :
                    v.                                      :
                                                            :
                                                            :
                                                            :
BRIAN PAUL THOMPSON                     :
                                                            :
                    Appellant                       :    No. 1100 MDA 2021


Appeal from the Order Entered July 20, 2021,
in the Court of Common Pleas of Columbia County,
Criminal Division at No(s):  CP-19-CR-0000087-2021.


BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                      **FILED AUGUST 22, 2022**

Brian Thompson appeals from the trial court's denial of his motion to

dismiss based on double jeopardy.  We reverse.

The trial court summarized the facts as follows:

> [Thompson] and Billee Kvedrowicz (Mother) are the
> biological parents of minor child "E.R.T."  On December 3, 2020,
> [Thompson] was ordered by the court to return the [child] to
> maternal grandmother pursuant to an existing custody order.
> [Thompson returned the child. However, after maternal
> grandmother exchanged the child per the custody order,
> Thompson again withheld the child from the child's maternal
> grandmother beyond the custody period].  On December 16,
> 2020, Mother filed a Petition for Contempt and Request for
> Emergency Relief.  After a hearing on December 22, 2020, the
> court determined [Thompson] had failed to comply with the
> standing order and was contemptuous of the court.  He was found
> to be in contempt of court.
>
> On December 23, 2020, a criminal complaint was filed
> charging [Thompson] with Interference with Custody of Children.
> On or about December 27, 2020, [child] was returned to maternal

grandmother, and [Thompson] surrendered himself to law enforcement. On February 24, 2021, a sentencing hearing for contempt was conducted, and [Thompson] was sentenced to pay a fine of $1,000[.00] and serve a flat sentence of incarceration of 5 days. During the February 24, 2021, hearing, Judge Gary E. Norton cited the "vindication of the dignity and authority of the Court", referencing "yelling" and "accusations" that occurred in his presence at the hearing. In regards to [Thompson's] conduct, Judge Norton stated:

> I would deem this to be either direct criminal contempt or indirect criminal contempt. Civil contempt is for the purpose of ensuring or coercing compliance. There has been compliance at this point. At this point, though, it's an issue of vindication of the dignity and authority of the Court. Some of this stuff happened in my presence during the hearing, and that was the repeated accusation after I made a finding of fact that it was incorrect, not a fact, that the child was being raped. And, also then out of my presence, which is indirect criminal contempt for failure to return the child—the Sheriff said December 27th—that is five days. I told him before he hung up that the child was to be returned and have the Order followed precisely. And if there were any problems, they were to be reported to Children and Youth Services, who was then to take matters into their hands. So I don't deem this to be a civil contempt hearing. I deem this to be a criminal contempt hearing.

N.T., 2/24/21, at 10.

Trial Court Opinion, 11/09/21, at 1-3.

Following the sentencing hearing for contempt, Thompson filed a timely omnibus pre-trial motion asking the court to dismiss the criminal charge against him based on double jeopardy. On July 20, 2021, the trial court denied

the motion.[1] Thompson moved for reconsideration, which the court denied, and this timely appeal followed.

Thompson raises one issue on appeal. He asks whether his "prosecution . . . for interference with the custody of children [is] barred by double jeopardy pursuant to the 5th Amendment of the United States Constitution[.]" Thompson's Brief at 4.

Thompson argues that an indirect criminal contempt conviction for violating a custody order addresses the same elements as a prosecution for interference with the custody of children. Thus, the instant prosecution, based on the same conduct for which he was convicted of indirect criminal contempt, is barred by double jeopardy. We agree.

"[A]n appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*." **Commonwealth. v. Kearns**, 70 A.3d 881, 884 (Pa. Super. 2013) (quoting **Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008)).

"The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" **Commonwealth v. Jackson**, 10 A.3d 341, 344-45 (Pa. Super. 2010), quoting (**Commonwealth**

---

[1] The requirements of Pa.R.Crim.P. 587(b) have been met, rendering this question immediately appealable as a collateral order.

***v. Decker***, 664 A.2d 1028, 1029 (Pa. Super. 1995)).  Furthermore, double jeopardy protects against a second prosecution for the same offense after acquittal or conviction, and it protects against multiple punishments for the same offense. ***Id.***

In determining whether a defendant's protection against multiple punishments for the same offense has been violated, we apply the test set forth in ***Blockburger v. United States***, 284 U.S. 299 (1932). Under the ***Blockburger*** test, "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." ***United States v. Dixon***, 509 U.S. 688, 696 (1993). "The same-elements test, sometimes referred to as the '***Blockburger***' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." ***Id.***

Applying the ***Blockburger*** test "requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not."  ***Commonwealth v. Caufman***, 662 A.2d 1050, 1052 (Pa. Super. 1995) (some punctuation omitted).  Mere overlap in proof between the two prosecutions does not establish a double jeopardy violation. ***Id.***

As a preliminary matter, we note that a trial court may order civil or criminal contempt.  ***In the Interest of E.O.***, 195 A.3d 583, 586 (Pa. Super. 2018) (quoting ***In the Interest of C.W.***, 960 A.2d 458, 466 (Pa. Super.

2008)). If the court's dominant purpose in finding contempt is to coerce compliance by the contemnor, the adjudication is civil in nature. *Id.* If the court's dominant purpose is to punish disobedience by the contemnor, the adjudication is criminal in nature. *Id.*

In Pennsylvania, we further distinguish between direct and indirect criminal contempt.

> A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court. A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court.

*Id.*

Here, the trial court found Thompson in indirect contempt for violating its custody orders, including the orders dated May 22, 2020, and December 3, 2020.[2] Section 5323 of the Domestic Relations Code authorizes a court to sanction for contempt for failure to comply with a custody order:

**(g) Contempt for noncompliance with any custody order**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt.

---

[2] While the trial court cited Thompson's courtroom behavior in the second contempt hearing on February 24, 2021, the original contempt order found Thompson in contempt only for violating the two custody orders, not for his behavior in the courtroom. In addition, the sentencing order dated February 24, 2021, referred only to a finding of indirect contempt. Thus, for the purposes of our double jeopardy analysis, we compare the finding of indirect contempt of custody with the instant prosecution for interference with the custody of children.

Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

23 Pa.C.S.A. § 5323(g)(1)(i)-(ii). "Contempt of court will always comprise the following two elements: (1) a court order made known to the defendant, and (2) willful violation of that order." **Commonwealth v. Yerby**, 679 A.2d 217, 220 (Pa. 1996).

Thompson presents this Court with the question of whether double jeopardy bars a prosecution for the interference with the custody of children when the charge is based on the same conduct for which he was convicted of indirect contempt. The Supreme Court of the United States held that the Double Jeopardy Clause applies to criminal contempt prosecutions just as it does to other criminal prosecutions. **Dixon**, 509 U.S. at 696.

In Pennsylvania, our Supreme Court rejected a literalistic application of the **Blockburger** test to criminal contempt convictions, noting that such an approach "renders double jeopardy protections illusory" as "neither [element of indirect contempt] will ever be necessary in proving a substantive criminal offense and every substantive criminal offense will contain additional elements." **Yerby**, 679 A.2d at 220. Instead, the court opted for an approach that considers the specific contempt order at issue and the elements of its violated conditions. **Id.** at 221. As the Court explained, "[W]e must look to the specific offenses at issue in the contempt proceeding and compare the

elements of those offenses with the elements of the subsequently charged criminal offenses." *Id.* "If they are the same, or if one is a lesser included offense of the other, double jeopardy attaches and the subsequent prosecution is barred." *Id.* "The focus, then, is on the offense(s) for which the defendant was actually held in contempt." *Id.*

In **Yerby**, the trial court held the defendant in indirect criminal contempt for violating the terms of a Protection from Abuse (PFA) order. Specifically, the defendant violated the order's provision that enjoined him from "striking, threatening, abusing or harassing" his ex-girlfriend when he threatened the woman with a firearm, choked her, and forced her into a vehicle. *Id.* Following the finding of indirect criminal contempt, the Commonwealth charged the defendant with making terroristic threats. After the trial court denied his motion to dismiss on double jeopardy grounds, a jury convicted him of the terroristic threats offense and this Court affirmed that conviction. *Id.*

On appeal, our Supreme Court held that double jeopardy did not apply because (1) the defendant was never found guilty of making terroristic threats at the contempt hearing and (2) the actual PFA order at issue did not include the elements of terroristic threats. *Id.* at 223. The trial court based its finding of contempt on the violent incident between the defendant and his ex-girlfriend, but it never specified that the defendant violated the order by making threats. *Id.* Furthermore, "[e]ven if the finding of contempt was based on [the defendant's threats], the trial court need not have found that

the elements of the crime of terroristic threats were established." *Id.* "The PFA order prohibited [the defendant] not from committing the crime of terroristic threats, but only from 'threatening' [his ex-girlfriend]." *Id.* Since the trial court's finding of indirect criminal contempt did not require the prosecution to prove all elements of the offense of terroristic threats, double jeopardy did not bar the defendant's subsequent prosecution and conviction for making terroristic threats. *Id.*

This Court took a similar approach in **Commonwealth v. Jackson** to determine whether a finding of indirect criminal contempt, under the specific text of the PFA order, precluded the defendant from prosecution for criminal trespass. **Commonwealth v. Jackson**, 10 A.3d 341, 346 (Pa. Super. 2010). In **Jackson**, after the defendant was held in indirect criminal contempt of a PFA order for entering the marital residence, he was charged with criminal trespass for the same action. We compared the elements of criminal trespass with the elements of indirect criminal contempt and reasoned that:

> in order to prove that Jackson committed criminal trespass, the Commonwealth would have to prove that Jackson (1) knew he was not licensed or privileged to enter the marital residence and (2) that he entered the marital residence. In order to find Jackson in indirect criminal contempt, the Commonwealth would have to establish that Jackson (1) entered the [marital] residence, (2) despite knowing that he was not permitted to enter (as well as multiple elements that are not required for a conviction of criminal trespass, *i.e.* whether the PFA order was sufficiently specific; whether Jackson had notice of the PFA order; and whether he acted with wrongful intent). Therefore, in order to prove indirect criminal contempt, the Commonwealth would have to prove both elements that make up the crime of trespass, as well as additional elements unique to the indirect criminal contempt charge.

> Accordingly, in this instance, criminal trespass is a "species of lesser-included offense" of Jackson's indirect criminal contempt violation.

*Id.* Because the finding of indirect criminal contempt required the prosecution to establish both elements of the criminal trespass offense, this Court found that double jeopardy barred the subsequent prosecution. *Id.*

Here, we must compare the substantive charge of interference with the custody of children against the text of the custody orders Thompson violated to determine whether double jeopardy applies.

Under our statutes, a person commits the crime of interference with the custody of children "if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S.A § 2904. This court held that a defendant 'takes' a child under Section 2904 if he interrupts lawful custody with a physical act, including if he withholds a child from another's lawful custody. *Commonwealth. v. Giese*, 928 A.2d 1080, 1083 (Pa. Super. 2007).

The custody orders Thompson violated required him to return the child to the mother (or maternal grandmother) at the end of his periods of partial custody. First, he did not return the child in November, prompting a special relief petition and order dated December 3, 2020. This order required Thompson to return the child and to follow the parties' custody order of May 22, 2020. Thompson again refused to return the child to his maternal grandmother at the end of his next custody period. Mother again filed for

emergency relief and contempt. Based on Thompson's noncompliance with the standing orders, the trial court found him in indirect criminal contempt.

To find Thompson in contempt, the trial court had to find all the elements of interference with the custody of children. Under Section 2904, the Commonwealth would have to prove that Thompson (1) knowingly took a child under the age of 18 from the custody of its guardian (2) when he had no privilege to do so. 18 Pa.C.S.A § 2904. Likewise, to find Thompson in indirect criminal contempt for violating the custody orders, the trial court had to find that Thompson (1) knowingly withheld the child, who was under the age of 18 years, from the lawful custody of the child's maternal grandmother (2) without the privilege to do so (in addition to elements unique to the indirect criminal contempt charge).

Since withholding a child from another's lawful custody amounts to a taking under Section 2904, we find that the indirect criminal contempt offense contains all the elements of interference with the custody of children. The substantive offense is a lesser-included offense of the trial court's contempt finding. Thus, double jeopardy bars a subsequent prosecution for interference with the custody of children based on the same conduct for which Thompson had previously been held in indirect criminal contempt.[3]

---

[3] Although no Pennsylvania appellate court has addressed the precise issue raised in this appeal, we note that the Court of Criminal Appeals of Texas has addressed it. The Texas Court similarly concluded that double jeopardy barred a criminal prosecution under the Texas statute prohibiting interference with
*(Footnote Continued Next Page)*

Order reversed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2022


_____

child custody after a criminal contempt finding based on the same conduct. ***Ex parte Rhodes***, 974 S.W.2d 735, 736 (Tex. Crim. App. 1998).

In Texas, a person commits the offense of interference with child custody if he: (1) the takes or retains a child younger than 18 years of age; (2) "when the person knows that [his] taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's custody." Tex. Penal Code § 25.03 (emphasis added); ***see Hammack v. State***, 622 S.W.3d 910, 915 (Tex. Crim. App. 2021). Using this statutory language, the Texas Court concluded that indirect criminal contempt was a lesser-included offense of the interference with child custody charge.

Unlike the Texas Penal Code, the Pennsylvania statute prohibiting interference with the custody of children statute makes no specific reference to a court order. Nevertheless, we reach the same result as the Texas Court. In Texas, violating a specific child custody order is a lesser included charge in the criminal statute. In Pennsylvania, we conclude that the offense is a lesser included charge in violating the specific custody order. This is a distinction without a difference because in either scenario, double jeopardy bars a criminal prosecution after the defendant was found in contempt of the custody order for the same conduct.

- 11 -